Michael L. McGINLEY, Plaintiff,

v.

FRANKLIN SPORTS, INC., Defendant.

No. 98–2225–JWL.

United States District Court,
D. Kansas.

Feb. 18, 1999.

Karen D. Renwick, Kip D. Richards, Walters, Bender & Strohbehn, Kansas City, MO, for Michael L McGinley, plaintiff.

Joseph B. Bowman, Shook, Hardy & Bacon L.L.P., Kansas City, MO, for Franklin Sports Inc, defendant.

Joseph B. Bowman, Shook, Hardy & Bacon L.L.P., Kansas City, MO, for Franklin Sports Inc, counter-claimant.

Karen D. Renwick, Kip D. Richards, Walters, Bender & Strohbehn, Kansas City, MO, for Michael L McGinley, counter-defendant.

### MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff Michael L. McGinley alleges that baseballs sold in the United States by defendant Franklin Sports, Inc. ("Franklin") infringe certain claims of United States Patent 5,407,193 ("'193 patent"), which issued to the plaintiff on April 18, 1995. The matter is now before the court on the plaintiff's request pursuant to *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed.Cir.1995), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), for the court to construe claims 1, 2, 6, and 7 of the '193 patent as a matter of law. The court held a hearing on the matter on January 21, 1999, and is now prepared to rule. As a matter of law, the court determines that claims 1, 2, 6, and 7 of the '193 patent have meaning and scope as set forth below.[1]

### I. Background

The '193 patent discloses a baseball used to teach pitching students how to grasp a baseball in order to throw different types of pitches. The accused device is a baseball used to teach pitching students how to grasp a baseball in order to throw different types of pitches. Claim 1 of the '193 patent is as follows:

A baseball pitching training device for duplicating finger placement on a baseball by a student comprising:

a baseball cover;

a plurality of sets of finger placement indicia on said cover, said sets of indicia comprising:

a first set of indicia demarcating the placement of finger [sic, fingers] for throwing a first pitch;

a second set of indicia demarcating the placement of fingers for throwing, [sic] a second pitch;

a third set of indicia demarcating the placement of fingers for throwing a third pitch;

means for indicating the orientation of the baseball relative to the palm of the hand; and

means for coding said finger placement indicia sets for identification of each of said indicia associated with any one of said sets.

'193 patent.

Claim 3 is as follows:

The device as claimed in claim 1 wherein said sets of finger placement indicia include indicia sets for left-handed pitching students and indicia sets for right-handed students.

'193 patent.

### II. Discussion

When construing claims in a patent, the court must focus on how the claim would be interpreted by one of ordinary skill in the art at the time the patent was issued. *Markman*, 52 F.3d at 986. The court must look first to so-called intrinsic evidence—the claims, the written descrip-

---

1. Defendant does not contest the meaning of claims 2, 6, and 7. Accordingly, the court accepts the plaintiff's proposal to construe the terms of those claims according to their ordinary meaning.

tion, and the prosecution history of the patent. *Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1344 (Fed.Cir. 1998); *Markman*, 52 F.3d at 979. The claim terms are to be given their ordinary meaning unless it is apparent that the inventor intended to use them differently. *National Recovery Technologies, Inc. v. Magnetic Separation Systems, Inc.*, 166 F.3d 1190, (Fed.Cir.1999). The court "may look to the written description to define a term already in a claim limitation, for a claim must be read in view of the specification of which it is a part." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed.Cir.1998); *Markman*, 52 F.3d at 979. "However, the resulting claim interpretation must, in the end, accord with the words chosen by the patentee to stake out the boundary of the claimed property." *Renishaw PLC*, 158 F.3d at 1248 (citation omitted); *Intervet America, Inc. v. Kee–Vet Laboratories, Inc.*, 887 F.2d 1050, 1053 (Fed.Cir.1989) ("[L]imitations appearing in the specification will not [normally] be read into claims .... [i]nterpreting what is meant by a word *in* a claim is not to be confused with adding an extraneous limitation appearing in the specification, which is improper.") (citation and internal quotation marks omitted). The court should also consider, within its proper context, the patent's prosecution history. *Spectrum Intern., Inc. v. Sterilite Corp.*, 164 F.3d. 1372, 1378 (Fed.Cir.1998); *Markman*, 52 F.3d at 980 ("Although the prosecution history can and should be used to understand the language used in the claims, it too cannot enlarge, diminish, or vary the limitations in the claims.") (citations and internal quotation marks omitted). These inquiries are hierarchical; that is, the actual words of the claim are the controlling focus, the written description is secondary, and the prosecution history is tertiary. *See Digital Biometrics, Inc.*, 149 F.3d at 1344.

■ If necessary, the court may also, in its discretion, consider extrinsic evidence such as expert and inventor testimony, dictionaries, and learned treatises. *Markman*, 52 F.3d at 980. Extrinsic evidence, however, is only to be used as an aid to the judge in understanding the patented technology, not for varying the meaning of the claim terms. *EMI Group North America, Inc. v. Intel Corp.*, 157 F.3d 887, 892 (Fed. Cir.1998); *Markman*, 52 F.3d at 981. Once the court arrives at an understanding of the claim language, the court must pronounce the meaning of that language as a matter of law. *Id.*

### A. Finger Placement Indicia

■ Defendant asks the court to construe the "finger placement indicia" language of claim 1 to mean "markings placed on the surface of a single baseball cover to indicate location of the index · and middle fingertips for both right and left handed pitchers." Plaintiff disagrees. According to plaintiff, the claim language should be interpreted literally. That is, the plaintiff disclaims any interpretation of "indicia" that requires markings applicable to both right and left handed pitchers or that is limited to fingertips.

The court agrees with the plaintiff and adopts a literal reading of the unambiguous claim language; claim 1 discloses a baseball that has markings for left handed students, right handed students, or both. The court's conclusion is grounded in the plain language of claim 1. Nothing in the claim limits its scope to both right and left handed indicia. Moreover, the court's conclusion is grounded in the doctrine of claim differentiation, which presumes that there is a difference in scope among the claims of a patent. *See Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed.Cir.1998) ("There is presumed to be a difference in meaning and scope when different words or phrases are used in separate claims. To the extent that the absence of such difference in meaning and scope would make a claim superfluous, the doctrine of claim differentiation states the presumption that the difference between claims is significant." (citation omitted)). Claim 1 describes finger placement indicia which need not, on the face of the claim,

apply to both left and right handed pitching students. Claim 3, dependent upon claim 1, alters claim 1 only by adding the further limitation that the finger placement indicia include markings for left and right handed pitching students. Under the doctrine of claim differentiation, the court presumes that the finger placement indicia of claim 1 are not limited to indicia for both left and right handed pitchers because to so find would render claim 3 superfluous.

The defendant argues against the court's reading by pointing to the patent specification, which makes multiple references to the "both-right-and-left-handed" concept. *See, e.g.,* '193 patent, col. 2, lines 7–10 ("indicia . . . for both left and right handed students"); '193 patent, col. 1, lines 48–50 ("for both left and right handed students of pitching"). The court hesitates to so limit claim 1, however, because "[w]hile . . . claims are to be interpreted in light of the specification and with a view to ascertaining the invention, it does not follow that limitations from the specification may be read into the claims." *Sjolund v. Musland,* 847 F.2d 1573, 1581 (Fed.Cir.1988). The Federal Circuit has recognized "that there is sometimes a fine line between reading a claim in light of the specification, and reading a limitation into the claim from the specification." *Comark Communications, Inc.,* 156 F.3d at 1186 (finding the defendant's sought claim construction without merit because the disputed term had a clear and well-defined meaning and because the defendant sought to borrow a limitation appearing directly in the preferred embodiment section of the specification).

Although the question here is much closer than it was in *Comark Communications,* the court does not believe the '193 patent specification language is sufficient to overcome the presumption that claim 3 is not completely superfluous. *Cf. ATD Corp. v. Lydall, Inc.,* 159 F.3d 534, 541 (Fed.Cir.1998) (claim differentiation presumption overcome where dependent claim was not rendered completely superfluous by defendant's proposed interpretation,

patent specification specifically referred to defendant's proposed interpretation, and text of independent claim itself implicitly supported defendant's proposed interpretation). Defendant's reliance on the '193 patent specification carries some appeal because, unlike *Comark Communications,* it is based not merely on the preferred embodiment of the '193 patent but on the background and summary of the invention, as well. On the other hand, the language of the claim itself here, although not entirely precise, unlike *ATD Corp.* and like *Comark Communications,* is not ambiguous. The court believes that a person of reasonable skill in the art would understand the "finger placement indicia" limitation not to exclude baseballs having only indicia for right or left handed students. Moreover, like *Comark Communications* and unlike *ATD Corp.,* nothing on the face of claim 1 implicitly supports the defendant's proposed interpretation.

■ The defendant also relies on the prosecution history, which, according to the defendant, indicates that the plaintiff relied on the both-right-and-left-handed concept before the Patent and Trademark Office and the Board of Patent Appeals and Interferences. As an initial matter, the court rejects the defendant's argument because the defendant has not sufficiently demonstrated on the record before the court that the plaintiff understood or otherwise represented during the patent's prosecution that "finger placement indicia" refers only to both-right-and-left-handed indicia. The defendant asks the court to find that the case here is akin to *Gentry Gallery, Inc. v. Berkline Corp.,* 134 F.3d 1473, 1479–80 (Fed.Cir.1998) (reversing bench trial factual finding that patent was not invalid for failure to comply with written description requirement of § 112 par. 1 where original disclosure was not broad enough to support broad reading advanced by plaintiff). Whatever the merits of this argument, however, it is premature because a determination of validity under § 112 par. 1 is an issue of fact and is thus

inappropriate for determination in a *Markman* proceeding. *See Tronzo v. Biomet,* 156 F.3d 1154, 1158 (Fed.Cir.1998); *Gentry Gallery, Inc.,* 134 F.3d at 1479. Although the Federal Circuit has explained that where, after all intrinsic-evidence-based canons of claim construction have been exhausted, "there is an equal choice between a broader and a narrower meaning of a claim, and there is an enabling disclosure that indicates that the applicant is at least entitled to a claim having the narrower meaning, we [will adopt] the narrower meaning," *see Athletic Alternatives, Inc. v. Prince Mfg., Inc.,* 73 F.3d 1573, 1581 (Fed.Cir.1996), *cited in Digital Biometrics v. Identix Inc.,* 149 F.3d 1335, 1344 (Fed.Cir.1998) (canon applies only after consideration of intrinsic evidence fails to resolve doubt about the exact meaning of the claim terms), the canon has no application here. As explained above, consideration of intrinsic evidence leaves the court confident that the finger placement indicia limitation of claim 1 does not require both-left-and-right-handed markings.

▆▆▆ Finally, the defendant claims that its reading of the disputed language must be adopted because adopting the plaintiff's reading would cause claim 1 to read directly on United States Patent 2,925,273, issued in 1960 to Pratt (the "Pratt patent"), and cited in the prosecution history of the patent in suit.[2] When construing a claim, it is appropriate to consider prior art patents that have been cited in the prosecution of a patent in suit. *See Eastman Kodak Co. v. Goodyear Tire & Rubber Co.,* 114 F.3d 1547, 1555 (Fed. Cir.1997), *overruled on other grounds by Cybor Corp. v. FAS Technologies, Inc.,* 138 F.3d 1448, 1456 (Fed.Cir.1998) (en banc). The court must endeavor to construe claims in such a way that their validity will be upheld. *Quantum Corp. v. Rodime, PLC,* 65 F.3d 1577, 1584 (Fed.Cir.1995).

The court rejects the defendant's Pratt-based argument because the court does not believe it can conclude that the construction adopted today reads on Pratt as a matter of law. *See* 35 U.S.C. § 102(b); *Electro Med. Sys., S.A. v. Cooper Life Sciences, Inc.,* 34 F.3d 1048, 1052 (Fed.Cir. 1994) (anticipation requires the presence of each and every element of a claimed invention within a single prior art disclosure); *Lewmar Marine, Inc. v. Barient, Inc.,* 827 F.2d 744, 747 (Fed.Cir.1987) ("That which would literally infringe if later in time anticipates if earlier than the date of the invention.") (emphasis omitted). Specifically, Pratt may not have "means for indicating the orientation of the baseball relative to the palm of the hand" as required by claim 1. During prosecution of the '193 patent, the Board of Patent Appeals and Interferences of the Patent and Trademark Office concluded that Pratt does not disclose orientation means. *Ex parte McGinley,* No. 94–1121, slip op. at 15 (Bd. Patent App. Feb. 10, 1994) (expressly overruling patent examiner's conclusion that Pratt discloses orientation means). Of course, the defendant may litigate in this case whether Pratt discloses orientation means, but the issue is not appropriate for determination in this *Markman* proceeding because it is an issue of fact— not law. *See Electro Med.Sys.S.A.,* 34 F.3d at 1052; *Haney v. Timesavers, Inc.,* 900 F.Supp. 1375, 1378 (D.Or.1995) (narrow claim construction based on asserted prior art anticipation under broad reading is inappropriate where anticipation is a disputed issue of fact); *Elf Atochem North America, Inc. v. Libbey–Owens–Ford Co.,* 894 F.Supp. 844, 860 (D.Del.1995) ("to preserve Atochem's right to a jury trial on the [disputed] issue of anticipation, this court will not look to the [prior art] patent in construing the words in claim 1 of the [patent in suit]").

## B. Means for Indicating Orientation

▆▆▆ Defendant asks the court to construe the "means for indicating the orientation of the baseball relative to the palm

---

**2.** The defendant advanced this argument for the first time at the court's January 21, 1999 hearing. The defendant did not make this argument in its papers.

of the hand" claim language as limited to a slight taper at one end of each marking in the direction of the palm of the hand. Plaintiff seeks a broader construction, and asks the court to construe the limitation in issue to capture any "asymmetrically shaped indicia and their equivalents." Generally adopting the defendant's proposed approach, the court construes the disputed language to mean "a slight taper at the portion of each indicia situated closest to the palm of the hand, and any equivalents of such structure."

Congress has allowed patentees the ability to express their claims in functional, rather than structural, language, but the exercise of that ability comes at a price. "An element in a claim for a combination may be expressed as a means or step for performing a specified function, without the recital of structure, material or acts in support thereof, and such claim shall be construed to cover the *corresponding structure*, materials, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112 ¶ 6 (1994) (emphasis added) (sometimes referred to as the "means-plus-function" formulation). The parties agree that the disputed limitation falls within the ambit of section 112/6.

■ Construction of claims under section 112/6, including construction of both the claimed function and the claimed means, is a question of law. *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus.*, 145 F.3d 1303, 1309 (Fed.Cir.1998) (citing *Cybor Corp. v. FAS Technologies, Inc.*, 138 F.3d 1448 (Fed.Cir.1998) (en banc); *B. Braun Medical, Inc. v. Abbott Laboratories, NP Medical, Inc.*, 124 F.3d 1419, 1424–25 (Fed.Cir.1997)). When construing such claims, the court must be mindful that "structure disclosed in the specification is 'corresponding' structure only if the specification or prosecution his-

tory clearly links or associates that structure to the function recited in the claim." *B. Braun Medical, Inc. v. Abbott Laboratories, NP Medical, Inc.*, 124 F.3d 1419, 1424 (Fed.Cir.1997).

The court construes the disputed claim language to mean "a slight taper at the portion of each indicia situated closest to the palm of the hand, and any equivalents of such structure."[3] The function recited in the disputed means clause is "indicating the orientation of the baseball relative to the palm of the hand." The specification clearly identifies the structure performing that function as shaped indicia such that "[t]he portion of each indicia intended to be situated closest to the palm is slightly tapered thereby to assist the student in achieving correct orientation of the ball in the palm." '193 patent, col. 5, lines 19–22.

### C. Means for Coding

■ Defendant asks the court to construe the "means for coding said finger placement indicia sets" language to limit it to "color, or size, or both color and size for the markings so that like markings are associated with a particular pitch for both right and left handed pitchers." Plaintiff asks the court to construe the language to mean "indicia coded by color, by size, and/or by both color and size" and any equivalents of such structure.

The court adopts the plaintiff's proposed approach; the disputed language means "indicia coded by color, by size, and/or by both color and size, and any equivalents of such structure." The parties agree that the disputed language falls within the ambit of section 112/6. The function recited in the disputed means clause is "coding said finger placement indicia sets for identification of each said indicia associated with any one of said sets." The specifica-

---

**3.** It is apparent that the parties disagree on whether the court should construe section 112/6 claims to include "any equivalents of such structure." The Federal Circuit made it clear in the very recent *Chiuminatta* case that claim construction under section 112/6 *requires* consideration of equivalents. *Chiumi-*

*natta Concrete Concepts*, 145 F.3d at 1309–10 (consideration of equivalent structures is part of claim construction and is "not coextensive" with separate analysis of whether accused device infringes patent under doctrine of equivalents).

tion clearly identifies the structure performing that function as indicia of different size and/or color. Accordingly, the plaintiff's proposed approach is proper here.[4]

**IT IS THEREFORE ORDERED BY THE COURT THAT** claims 1, 2, 6, and 7 of the '193 patent will henceforth, as a matter of law, be construed in a manner consistent with this memorandum and order.

**IT IS SO ORDERED.**

---

4. Of course, the court has already rejected that portion of the defendant's proposed construction referring to both left and right handed pitchers. That aspect of the defendant's request has no bearing here.