**Michael L. McGINLEY, Plaintiff,**

v.

**FRANKLIN SPORTS, INC., Defendant.**

No. 98–2225–JWL.

United States District Court,
D. Kansas.

April 5, 2000.

Karen D. Renwick, Thomas V. Bender, Kip D. Richards, Walters, Bender, Strohbehn & Vaughan, P.C., Kansas City, MO, for Plaintiff.

Joseph B. Bowman, Shana J. Long, Daniel P. Devers, Shook, Hardy & Bacon, L.L.P., Kansas City, MO, for Defendant.

Lawrence L. Ferree, III, Ferree, Bunn, O'Grady & Rundberg, Chtd., Overland Park, KS, for Intervenor.

### *MEMORANDUM AND ORDER*

LUNGSTRUM, District Judge.

In this patent infringement case, plaintiff alleges that defendant's distribution and sale of baseball pitching trainer devices infringe certain claims of United States Patent No. 5,407,193. After summary judgment was granted in favor of plaintiff on the issue of infringement but denied on the issue of validity, *see McGinley v. Franklin Sports, Inc.,* 75 F.Supp.2d 1218, 1224–25 (D.Kan.1999), a jury trial in

this matter was held before the court between January 11, 2000 and January 19, 2000. On January 19, 2000, the jury returned a verdict in favor of plaintiff, finding the '193 patent valid and willfully infringed. Presently before the court are the issue of inequitable conduct and defendant's renewed motion for judgment as a matter of law, or, in the alternative, for new trial (doc. 200). For the reasons set forth below, defendant's motion for judgment as a matter of law is granted in part and denied in part. It is granted as to validity; it is denied as to willfulness. Defendant's alternative request for a new trial is denied.

## I. Background

On April 18, 1995, United States Patent No. 5,407,193 (the " '193 patent") was issued by the United States Patent and Trademark Office ("PTO") in favor of plaintiff McGinley. The '193 patent claims an instructional pitching device in the form of a baseball with specific finger placement indicia used to teach students how to grasp a baseball in order to throw different types of pitches. Plaintiff's invention was marketed and distributed as the Roger Clemens Instructional Baseball ("RCIB"). Defendant Franklin Sports also manufactured and sold a baseball designed to teach students how to throw different types of pitches. Defendant sold the allegedly infringing device, the Franklin Pitch Ball Trainer 2705 (the "2705 ball"), from at least as early as April, 1995 to March, 1999.

Plaintiff alleges that the accused device infringes claims 1, 2, 6, and 7 of the '193 patent. Those claims read as follows:

Claim 1: A baseball pitching training device for duplicating finger placement on a baseball by a student comprising:

a baseball cover;

a plurality of sets of finger placement indicia on said cover, said sets of indicia comprising:

a first set of indicia demarcating the placement of finger [sic] for throwing a first pitch;

a second set of indicia demarcating the placement of fingers for throwing, [sic] a second pitch;

a third set of indicia demarcating the placement of fingers for throwing a third pitch;

means for indicating the orientation of the baseball relative to the palm of the hand; and

means for coding said finger placement indicia sets for identification of each of said indicia associated with any one of said sets.

Claim 2: The device as claimed in claim 1 wherein said means for coding comprises a color for association with each indicia of a particular set.

Claim 6: The device as claimed in claim 1, wherein said means for indicating orientation comprises shaping said indicia to distinguish that portion of the baseball to be located proximate to the palm of the hand.

Claim 7: The device as claimed in claim 1 wherein said indicia are shaped to indicate a correct orientation of the baseball with respect to the palm of the hand.

'193 patent.

In its *Markman* ruling, the court construed these claims to have their ordinary meaning. *See McGinley v. Franklin Sports, Inc.,* 45 F.Supp.2d 1141 (D.Kan. 1999). It declined to limit them, as defendant invited it to do, to a device disclosing finger placement for both right and left-handed pitchers on one ball. *Id.* at 1143–1145.

On October 28, 1999, finding that, as a matter of law, defendants' pitching product infringed the '193 patent, the court granted plaintiff's motion for partial summary

judgment on the issue of infringement. *See McGinley v. Franklin Sports, Inc.,* 75 F.Supp.2d 1218, 1224–25 (D.Kan.1999). At that time, the court denied defendant's motion for partial summary judgment on the issue of patent validity. *Id.* at 1226–32. The case then proceeded to a trial on the merits. The issue of inequitable conduct was reserved to the court and the balance of the issues were submitted to the jury. On January 19, 2000, the jury returned a verdict in favor of plaintiff, finding the '193 patent valid and willfully infringed. Defendant filed this post-trial motion, seeking judgment as a matter of law on the issues of validity and willfulness of infringement. Alternatively, defendant moves for a new trial.

## II. Legal Standards

■ It is well-settled that, as a general rule, "in deciding procedural questions that involve no special issues relating to patent law," the Federal Circuit applies the law of the regional circuit in which the trial court sits. *Sun–Tek Indus., Inc. v. Kennedy Sky Lites, Inc.,* 856 F.2d 173, 175 (Fed.Cir.1988). Accordingly, the court analyzes post-trial motions involving procedural matters not unique to the area of patent law in light of Tenth Circuit law. *Payless Shoesource, Inc. v. Reebok Int'l, Ltd.,* 998 F.2d 985, 987 (Fed.Cir.1993).

### A. Post–Verdict Motion for Judgment as a Matter of Law[1]

■ A motion for judgment notwithstanding the verdict ("judgment n.o.v") under Fed.R.Civ.P. 50 "may be granted only when, without weighing the credibility of the evidence, there can be but one reason-

able conclusion as to the proper judgment." *Jackson v. City of Albuquerque,* 890 F.2d 225, 230 (10th Cir.1989). Judgment as a matter of law is appropriate "only if the proof is all one way or so overwhelmingly preponderant in favor of the movant as to permit no other rational conclusion." *J.I. Case Credit Corp. v. Crites,* 851 F.2d 309, 311 (10th Cir.1988). "Judgment n.o.v. should be cautiously and sparingly granted." *Lucas v. Dover Corp.,* 857 F.2d 1397, 1400 (10th Cir.1988). "In determining whether the grant of a motion for judgment n.o.v. is appropriate, the court must view the evidence and indulge all inferences in favor of the party opposing the motion and cannot weigh the evidence, consider the credibility of witnesses or substitute its judgment for that of the jury." *Id.* (internal citations omitted).

### B. Motion for New Trial

■ Motions for a new trial are committed to the sound discretion of the trial court. *Hinds v. General Motors Corp.,* 988 F.2d 1039, 1046 (10th Cir.1993); *McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 556, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984). They are "not regarded with favor and should only be granted with great caution." *United States v. Kelley,* 929 F.2d 582, 586 (10th Cir.1991). Where a jury's verdict is challenged as contrary to the evidence, the court's "inquiry focuses on whether the verdict is clearly, decidedly or overwhelmingly against the weight of the evidence." *Black v. Hieb's Enters., Inc.,* 805 F.2d 360, 363 (10th Cir.1986).

## III. Analysis

### A. Inequitable Conduct

According to the Federal Circuit, "[t]he defense of inequitable conduct in a patent

---

1. The court notes that Fed.R.Civ.P. 50 was amended in 1991, and now allows parties to move for "judgment as a matter of law" before the case is submitted to the jury, *see* Fed.R.Civ.P. 50(a), and for a "renewed judgment as a matter of law" within 10 days of the entry of judgment, *see* Fed.R.Civ.P. 50(b). Although the "judgment as a matter of law"

or "JMOL" terminology replaces the earlier designations of "directed verdict" and "judgment notwithstanding the verdict," the legal standards governing the analysis of such motions remain unchanged. *See Weese v. Schukman,* 98 F.3d 542, 547 (10th Cir.1996); 1991 advisory committee notes to Fed.R.Civ.P. 50.

suit, being entirely equitable in nature, is not an issue for a jury to decide." *Paragon Podiatry Laboratory, Inc. v. KLM Laboratories, Inc.*, 984 F.2d 1182, 1190 (Fed.Cir.1993). Accordingly, evidence regarding this issue was presented to the court during trial, but the jury was not instructed with respect to defendants' inequitable conduct defense. The issue is now ripe for determination by the court.

Whether a party has engaged in inequitable conduct before the PTO requires the party challenging the enforceability of a patent to establish, by clear and convincing evidence, that the alleged misrepresentation or omission of information was both material and effected with the requisite level of intent. *See, e.g., Kingsdown Med. Consultants, Ltd. v. Hollister Inc.*, 863 F.2d 867, 872 (Fed.Cir. 1988). Materiality of the alleged misrepresentation is determined by assessing "whether a reasonable examiner would consider the . . . misrepresentation important in deciding whether to issue the patent." *Akzo N.V. v. United States Int'l Trade Comm'n*, 808 F.2d 1471, 1481 (Fed. Cir.1986). The requisite level of intent is established if clear and convincing evidence "prove[s] that an applicant had the specific intent to accomplish an act that the applicant ought not to have performed, viz., misleading or deceiving the PTO." *Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1181 (Fed.Cir.1995). Once the threshold levels of "materiality and intent have been established, the court conducts a balancing test and determines whether the scales tilt to a conclusion that 'inequitable conduct' occurred." *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1256 (Fed.Cir.1997), *cert. denied*, 523 U.S. 1071, 118 S.Ct. 1511, 140 L.Ed.2d 665 (1998).

Where the alleged misrepresentation concerns prior art that was in fact considered by the PTO, the applicant's at-tempt to distinguish the prior art does not constitute inequitable conduct because "the examiner [is] free to reach his own conclusion." *Akzo*, 808 F.2d at 1481–82. Nonetheless, that the prior art is independently considered by the PTO does not alleviate the applicant's duty of candor to the PTO, and, therefore, a deliberate misrepresentation of the prior art's teachings, if sufficiently material, may justify a finding of inequitable conduct. *Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 938 (Fed.Cir.), *cert. denied*, 498 U.S. 920, 111 S.Ct. 296, 112 L.Ed.2d 250 (1990) ("lapse on the part of an examiner does not exculpate an applicant whose acts are intentionally deceptive").

Pursuant to statute, "a qualifying small business concern, independent inventor, or nonprofit organization [is allowed] to pay half of the standard issue fee." *DH Technology, Inc. v. Synergystex Int'l, Inc.*, 154 F.3d 1333, 1339 (Fed.Cir.1998) (citing 35 U.S.C. § 41(a)(2), (h)(1)). According to 37 C.F.R. 1.9(c), an "independent inventor" is defined as

> any inventor who (1) has not assigned, granted, conveyed, or licensed, and (2) is under no obligation under contract or law to assign, grant, convey, or license, any rights in the invention to any person who could not likewise be classified as an independent inventor if that person had made the invention, or to any concern which would not qualify as a small business concern or a nonprofit organization under this section.

37 C.F.R 1.9(c). A party qualifying for the fifty percent reduction in fees, including independent inventors and small business concerns, is referred to as a "small entity." 37 C.F.R. § 1.9(f) ("A small entity as used in this chapter means an independent inventor, a small business concern, or a nonprofit organization eligible for reduced patent fees.") The Federal Regulations further provide that

> (1) Any attempt to fraudulently (i) establish status as a small entity or (ii) pay

fees as a small entity shall be considered as a fraud practiced or attempted on the Office.

(2) Improperly and with intent to deceive (i) establishing status as a small entity, or (ii) paying fees as a small entity shall be considered as a fraud practiced or attempted on the Office.

37 C.F.R. § 1.28(d).

The court notes that neither party has chosen to brief this issue, and no proposed conclusions of law or of fact regarding plaintiff's alleged inequitable conduct before the PTO have been submitted by the parties for the court's consideration. The court will simply attempt to determine what evidence defendant believes supports its inequitable conduct defense, and then to assess whether such evidence is sufficient to render the '193 patent unenforceable on the ground of inequitable conduct.

■ Turning to the evidence presented at trial, the only evidence with respect to inequitable conduct the court can discern from the trial record falls into two categories: (1) the facts concerning Mr. McGinley's failure to amend his application following the licensing of his invention to USA Products, an event defendant contends altered his eligibility for independent inventor status, and (2) Mr. McGinley's characterization, in his prior art disclosure form, of the Pratt ball as having indentations or other surface alterations.

Stated simply, the court does not believe that defendant has carried its burden to prove, by clear and convincing evidence, that plaintiff's actions during the patent application process render the '193 patent unenforceable for inequitable conduct. To the extent that Mr. McGinley's failure to amend his application to reflect the fact that he had granted to USA Products a license to sell his invention can be considered to be inequitable conduct before the PTO, there is no evidence in the trial

record to suggest that USA Products does not qualify as a "small business concern," and the court cannot simply conclude, without the benefit of such evidence, that Mr. McGinley was no longer entitled to claim independent inventor status under 37 C.F.R. § 1.9(c). *See* 37 C.F.R. § 1.9(c)(2) (independent inventor is one who is "under no obligation under contract or law to assign, grant, convey, or license, any rights in the invention to any person who could not likewise be classified as an independent inventor if that person had made the invention, *or to any concern which would not qualify as a small business concern or a nonprofit organization under this section.*") (emphasis added).

Furthermore, although Mr. McGinley was indeed obligated to amend his patent application to reflect the fact that, by granting an exclusive license to USA Products, he was no longer entitled to claim small entity/independent inventor status if that were indeed the case, there is simply no evidence that plaintiff's failure to so amend his application was intentional. Indeed, Mr. Stitt, plaintiff's attorney during the patent prosecution process, testified that, at the time that Mr. McGinley signed the form indicating his intent to proceed as an independent inventor despite the existence of the USA Products license which, as noted above, may or may not have divested McGinley of that status, Mr. Stitt believed that Mr. McGinley was entitled to so proceed. Mr. Stitt was unable to remember whether he actually asked Mr. McGinley whether he still qualified under the small entity category, or whether Mr. Stitt simply assumed that Mr. McGinley's status as an independent inventor remained unchanged. Defendant presented no evidence to rebut the testimony of Mr. Stitt, and put on no evidence from Mr. McGinley with respect to the issue. As it relates to Mr. McGinley's failure to alert the PTO of the licensing of his invention to USA Products, absent any evidence in the

trial record to indicate that this instance of alleged inequitable conduct was effected with the requisite intent, defendant has not proven the first element of its inequitable conduct defense. Defendant's inequitable conduct claim on the basis of this evidence is, therefore, denied.

■ With respect to plaintiff's apparent misrepresentation of the Pratt patent as describing a ball with indentations or other surface alterations that would affect the way that the ball would travel through the air, the court finds that defendant has also failed to meet its burden to prove that this statement is sufficient to render the '193 patent unenforceable on the basis of inequitable conduct. The only evidence offered by the parties with respect to this issue was the testimony of Mr. Stitt, and that testimony at best establishes that Mr. Stitt did not understand the scope of the Pratt patent, or at worst failed to proofread the application he prepared on Mr. McGinley's behalf.

As was true with the "failure to amend to reflect change in small entity status" evidence of inequitable conduct, no evidence was offered to establish that the misrepresentation of Pratt was material to the PTO's decision to issue the '193 patent. As set forth above, materiality turns on the determination of whether a reasonable examiner would consider the misrepresentation important in deciding whether to issue the patent. Here, rather than accepting Mr. Stitt's mischaracterization of the Pratt patent, Mr. Stitt indicated that the patent examiner quickly disabused him of the notion that the outer surface of the Pratt invention exhibited any sort of depressions or indentations. There exists in the record no evidence to rebut this testimony. Because the Pratt patent was before the PTO and is, therefore, presumed to have been independently considered by the examiner, and further because the evidence suggests that the examiner disregarded the incorrect representation of Pratt, the court concludes that defendant has failed to establish that plaintiff's error in representing the Pratt patent was material to the '193 patent's issuance.

Moreover, there exists no evidence on the trial record to suggest that the misrepresentation of the Pratt patent was effectuated with the requisite level of intent. On the contrary, Mr. Stitt testified that although the application characterized the Pratt ball as having various depressions and projections which would affect the surface characteristics of the ball, he did not intend to mislead the PTO with respect to the teachings of the Pratt patent. Defendant offered no evidence to contradict Mr. Stitt's testimony that the misrepresentation was wholly unintentional. The court found Mr. Stitt to be credible. Absent a showing of deliberate intent to deceive or mislead the PTO, the court cannot conclude that plaintiff's incorrect characterization of the Pratt patent amounts to inequitable conduct.

In sum, and for the reasons set forth above, the court concludes that defendant has failed to meet its burden to prove that the '193 patent is rendered unenforceable on the basis of inequitable conduct.

### B. Defendant's JMOL Motion

Having resolved the issue of inequitable conduct, the court turns next to the merits of defendant's renewed motion for judgment as a matter of law. The thrust of defendant's motion is that the plaintiff's patent is invalid for obviousness as a matter of law.

A patent is invalid for obviousness if "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said

subject matter pertains." 35 U.S.C. § 103(a). "Throughout the obviousness determination, a patent retains its statutory presumption of validity, *see* 35 U.S.C. § 282, and the movant retains the burden to show the invalidity of the claims by clear and convincing evidence as to underlying facts." *Rockwell Int'l. Corp. v. United States,* 147 F.3d 1358, 1364 (Fed.Cir. 1998).

■■■ It is well-settled that "the ultimate question of obviousness is a question of law." *Richardson–Vicks Inc. v. Upjohn Co.,* 122 F.3d 1476, 1479 (Fed.Cir.1997). Even so, "it is well understood that there are factual issues underlying the ultimate obviousness decision." *Id.* Specifically, the obviousness analysis is based on four underlying factual inquiries, the so-called *Graham* factors: "(1) the scope and content of the prior art; (2) the differences between the claims and the prior art; (3) the level of ordinary skill in the pertinent art; and (4) secondary considerations, if any, of nonobviousness." *Kegel Co., Inc. v. AMF Bowling, Inc.,* 127 F.3d 1420, 1430 (Fed.Cir.1997); *Graham v. John Deere Co.,* 383 U.S. 1, 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

In its papers, and as was true at the summary judgment stage, defendant contends that plaintiff's patent is invalid for obviousness. More specifically, defendant argues that U.S.Patent Nos. 3, 110, 494 and 2,925,273, the Morgan and Pratt patents, respectively, render plaintiff's use of finger markings as a means for orientation of the ball within the palm of the hand obvious to one of ordinary skill in the art, and that, in light of the evidence presented at trial, no reasonable juror could conclude

that the '193 patent is valid and nonobvious. In response, plaintiff argues that substantial evidence supports the jury's verdict with respect to the obviousness issue, and that it should not, therefore, be disturbed.

There appears to be little dispute between the parties with respect to the evidence presented at trial regarding the first three *Graham* factors; in fact, the only apparent factual conflict relates to the evidence of secondary considerations. More specifically, according to the parties, there exists no dispute with respect to the scope and content of the prior art. Def.Mem. in Supp. at 8 ("The scope of the prior art is clear."); Pl.Mem. in Opp. at 11 ("There is no dispute about the scope and content of the prior art.") Specifically, the parties agree that the relevant prior art references are the Morgan and Pratt patents.

There also appears to be no significant dispute regarding the differences between the patented invention and the prior art. Because the markings denoting finger placement on the Pratt patent were round as opposed to egg-shaped, the parties agree that Pratt differed from the '193 patent in at least that respect. Furthermore, the parties agree that whereas the Morgan patent taught the use of a pitching device comprising markings on two glued-together hemispherical shells, plaintiff's pitching trainer consists of markings on a regulation baseball.[2] The Morgan patent further differs from the '193 patent because whereas the '193 patent teaches a variety of different pitches, the Morgan patent claimed a product for use in instructing students to throw a baseball "so that it will curve or break." Morgan Patent at 1:15–16.

2. In its papers, defendant contends that nothing in the claims of the '193 patent specifically limits plaintiff's invention to regulation baseballs. While this assertion is technically correct, the court notes that the patent specification describes the preferred embodiment as "conform[ing] to the official size and weight requirements of a regulation base-

ball," '193 patent at 2:63–64, and a patent is to be read in light of its specification. In any event, it is undisputed that plaintiff's patent does not teach the use of glued-together semispherical shells, and it is thus clear that plaintiff's invention and the Morgan patent differ in at least that respect.

■ Additionally, with respect to the level of ordinary skill in the art, no material fact issue exists. As noted by plaintiff, defendant failed to present specific evidence at trial to establish the level of skill in the art. To the extent that plaintiff argues that defendant has failed to meet its burden to prove invalidity by failing to solicit expert testimony to establish the level of ordinary skill in the art, however, the court notes that, where, as in this case, the subject matter is easily understood, no expert testimony is required. *Chore–Time Equip., Inc. v. Cumberland Corp.,* 713 F.2d 774, 779 n. 2 (Fed.Cir.1983) ("We hold only that an invention may be held to have been either obvious (or nonobvious) without a specific finding of a particular level of skill or the reception of expert testimony on the level of skill where, as here, the prior art itself reflects an appropriate level and a need for such expert testimony has not been shown.") In this case, it is unclear what precise level of knowledge or skill would be necessary to understand the art of pitching devices, but it is clear that the subject matter is not complicated. Indeed, the idea of drawing finger marks on a baseball to show where to place one's fingers in order to throw different types of pitches is not a difficult concept to grasp, even by those without the benefit of extensive experience in the art of baseball pitching.[3] As a result, the court does not find defendant's failure to specifically establish the level of ordinary skill in the art fatal to its claim that the '193 patent is invalid as obvious over the prior art.

After carefully considering all of the evidence presented at trial, the inferences to be drawn from the jury's verdict, and the parties' papers with respect to defendant's JMOL motion, the court concludes that defendant is entitled to judgment as a matter of law on the issue of invalidity for obviousness. More specifically, notwithstanding plaintiff's arguments regarding the evidence of secondary considerations, and even if, as detailed below, the issue of whether the motivation to combine elements from the prior art is a question of fact within the province of the jury, the court concludes that in light of Pratt alone, as well as in light of Pratt and Morgan in combination, the claims set forth in the '193 patent are invalid as obvious.

The substance of defendant's motion for JMOL on the issue of validity turns on its contention that Pratt by itself, or the combination of Pratt and Morgan, renders the '193 patent invalid for obviousness. It is well-settled that, "[i]n order for a claim to be invalid for obviousness over a combination of references, there must have been a motivation to combine the prior art references to produce the claimed invention." *Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.,* 145 F.3d 1303, 1312 (Fed.Cir.1998). Such "evidence of a suggestion, teaching, or motivation to combine may flow from the prior art references themselves, the knowledge of one of ordinary skill in the art, or, in some cases, from the nature of the problem to be solved." *In re Dembiczak,* 175 F.3d 994, 999 (Fed.Cir.1999), *overruled on other grounds by In re Gartside,* 203 F.3d 1305 (Fed.Cir.2000).

The court notes that the Federal Circuit has recently characterized the determination of whether a motivation to combine prior art references existed at the time of the invention as a question of fact which is apparently bound up in, or incident to, the determination of the scope and content of the prior art. *See Winner Int'l Royalty Corp. v. Wang,* 202 F.3d 1340, 1348 (Fed. Cir.2000). Although it is evident that the parties strongly disagree as to whether the

---

**3.** The skill, of course, comes in knowing where to place the marks on the ball and being able to describe the necessary arm motions in order to effectuate each pitch. These matters are not in dispute in this case. The idea of placing marks on a ball to identify the points of contact between fingers and ball is unremarkable and hardly novel.

motivation to combine the elements found in Morgan and Pratt existed in this case, the parties specifically agree that no factual dispute exists with respect to the scope and content of the prior art. Neither party has addressed the significance of the *Winner* decision, if any, to the court's resolution of defendant's JMOL motion, however. To the extent that the issue is a question of fact, the court finds that no reasonable jury could conclude that the motivation to combine Pratt and Morgan did not exist.

■■■ In its papers, defendant contends that the "phantom lines" extending from the circular dots on the Pratt patent illustrations render the '193 patent's means for orientation, i.e., the tapering of the fingermarks to indicate placement of the ball within the hand, invalid for obviousness. This is the pivotal issue, because Pratt admittedly discloses all other material aspects of the '193 patent, as construed by the court in its *Markman* order; it is the inclusion of the means for orientation that differentiated the '193 patent and allowed it to issue as not anticipated by Pratt. Alternatively, defendant contends that if the phantom lines depicted in the Pratt patent illustrations do not themselves render the '193 patent obvious, the combination of Pratt and Morgan does. Plaintiff does not specifically address defendant's "Pratt phantom lines" argument, nor how the depiction of those lines, when viewed in light of Figure 6 of the Morgan patent, impacts the obviousness inquiry. Instead, plaintiff steadfastly maintains that, because the Pratt and Morgan patents were before the PTO and the '193 patent was not rejected on the basis of obviousness in light of those references, the presumption of validity in this case is particularly strong, and defendant has failed to produce evidence sufficient to overcome that presumption, as is made clear by the jury's verdict in plaintiff's favor. On the other hand, however, unlike the matter of antici-

pation, the record before the PTO which was presented at trial does not reveal that obviousness based on Pratt's phantom lines or Pratt plus Morgan was rejected by the Board of Patent Appeals in overriding the examiner's decision that Mr. McGinley's invention was not patentable.

Despite plaintiff's arguments to the contrary, the court concludes that, as a matter of law, the '193 patent is rendered invalid for obviousness over the prior art patents of Morgan and Pratt. In reaching this decision, the court finds determinative defendant's arguments regarding the Pratt phantom lines, and the visual cues suggested thereby, especially when viewed in light of Figure 6 of the Morgan patent. More specifically, the phantom lines found in the Pratt illustrations to which defendant refers to support its obviousness argument are, quite noticeably, dotted outlines of fingers (which identify the tips of the fingers as being placed over the dot on the ball) and, if actually sketched onto a baseball, would constitute a means of orienting the ball within a student's hand. That the phantom lines may never have been intended by Pratt to be actually drawn on the pitching device itself does not negate the fact that they do, in fact, appear in the patent specification and would certainly motivate one skilled in the art to actually place them on a ball. Accepting as true plaintiff's argument that the round dots claimed in the Pratt patent insufficiently indicate to the pitching student how to orient the ball with respect to the palm of the hand, the court believes that the idea to draw such lines in an effort to make more clear the precise placement of the fingers on the ball is nonetheless suggested by the illustrations set forth in the Pratt specification.

The court further concludes that, even if the depiction of the phantom lines in Pratt were not enough to motivate one skilled in the art to simply shade in a shape more akin to a finger print than a circular dot,

the additional visual cue to place marks more reminiscent of actual fingers or fingertips on the ball to alleviate any orientation confusion caused by the use of dots is supplied by the shaded-in finger-shaped marks in Figure 6 of the Morgan patent.[4] In that sense, the only motivation to combine Pratt and Morgan that is truly necessary is the common sense observation that one could fill in the area between the phantom lines to produce finger-shaped marks.

As set forth above, in concluding that the motivation to combine the Morgan and Pratt references existed in this case, the court rejects plaintiff's arguments to the contrary. More specifically, the court is simply unpersuaded by plaintiff's assertion in its papers that the Pratt and Morgan patents are so dissimilar from the '193 patent that no motivation to combine the references exists. Plaintiff's contention that the lack of motivation to combine is demonstrated by the fact that no invention similar to Mr. McGinley's was patented for over twenty years following the issuance of the Morgan and Pratt patents is likewise unavailing. Indeed, it is entirely possible that the attempt to patent such a product was not made *because* those of ordinary skill in the art deemed such a device obvious and unpatentable in light of Morgan and Pratt. Finally, although the court appreciates plaintiff's argument that the nether regions of the shaded and elongated finger-like shapes found in Figure 6 of the Morgan specification are obscured, and therefore unclear as to whether or not they may also be rounded-off, as a result of the perspective from which the illustra-

tion is drawn, the visual impression made by the illustration is communicated strikingly. Indeed, although it is certainly possible that the non-visible ends of the finger-like shaded areas might in fact be rounded-off like the visible ends, the fact that they are in fact "cut off" by the perspective from which the ball is drawn suggests lopping off the ends to make a more finger-like marking and thus provide a means for orientation.

The court also finds unpersuasive plaintiff's reliance on the purported evidence of secondary considerations to support his assertion that the court should not disturb the jury's verdict of nonobviousness. Those arguments are summarized as follows. First, plaintiff contends that the evidence presented at trial established that, prior to his invention, no product similar to plaintiff's invention was on the market, and thus that his device satisfied a long-felt need. Plaintiff also argues that the commercial success of the RCIB instructional baseball, as well as the commercial success enjoyed by Franklin's own infringing product, indicates that Mr. McGinley's invention was nonobvious. Additionally, plaintiff refers the court to the evidence of the praise his invention received from those in the sporting goods industry as establishing the novelty of plaintiff's pitching trainer. Plaintiff further contends that the fact that USA Products was interested enough to secure an oral license to sell plaintiff's invention indicates that the '193 patent is not invalid for obviousness.

In contrast, defendant contends that the evidence of secondary considerations, even

---

4. Neither the phantom lines of Pratt nor the alternative form of the invention claimed in Morgan are themselves patented; although a patent's claims must be interpreted in light of the patent specification, it is the words of the claims, not the illustrations or alternative embodiments described in the specification, that define the scope of a patent. *See, e.g., Comark Communications, Inc. v. Harris Corp.,* 156 F.3d 1182, 1186 (Fed.Cir.1998) ("Although

the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.") (citation omitted). The visual impressions made by a patent's illustrations and proposed alternative forms of the inventions claimed therein are not erased, however, because they are not themselves patented.

when viewed in the light most favorable to the plaintiff, is insufficient to overcome the fact that the '193 patent is invalid for obviousness, and that, in any event, the fact that several other persons submitted to Franklin Products ideas similar to Mr. McGinley's pitching training device at about the same time that Mr. McGinley reduced his idea to practice demonstrates how obvious Mr. McGinley's invention truly is. *See* Timothy R. DeWitt, *Use of Objective Evidence of Non–Obviousness in the Federal Courts,* 79 J.PAT. & TRADEMARK OFF. SOC'Y 823, 839 (1997) (citing *In re Merck & Co.,* 800 F.2d 1091, 1098 (Fed.Cir. 1986)) ("Contemporaneous independent development of the invention by another inventor strongly suggests that the invention of the patent was obvious.") In response, plaintiff argues that there was insufficient evidence to support the contention that the third party pitching devices to which defendant refers consisted were sufficiently similar to that disclosed in the '193 patent, and that the jury clearly resolved any factual conflicts regarding this issue in plaintiff's favor. Plaintiff further argues that the evidence clearly established that none of the third parties were able to reduce to practice inventions as useful as plaintiff's, and thus that plaintiff's pitching trainer satisfied a long-felt need others had tried, but failed, to solve.

While the ultimate obviousness determination may in some cases turn on the evidence relating to secondary considerations, the court concludes that this is not such a case. *See Richardson–Vicks,* 122 F.3d at 1483 ("the weight of secondary considerations may be of insufficient weight to override a determinations of obviousness based on primary considerations.") (citation omitted). Thus, although the evidence of secondary considerations presented by plaintiff, as well as the competing evidence submitted by defendant, is certainly a part of the overall evidence the court must consider, the court does not find the evidence sufficient to control the issue of obviousness. In this case, the court simply does not believe that the evidence regarding secondary considerations is sufficient to overcome its firm conclusion that, as a matter of law, plaintiff's patent is invalid as obvious in light of Pratt or the combination of Pratt and Morgan.

In short, the court concludes that, as a matter of law, the jury's verdict on the issue of validity cannot stand. In arriving at this conclusion, the court recognizes that, in retrospect, no issues of material fact regarding the question of obviousness existed in this case, and thus the court should not have submitted the obviousness inquiry to the jury. Additionally, the court notes that, had defendant presented the arguments concerning the Pratt phantom lines and the Morgan shading which were developed in their JMOL motions to the court at the summary judgment stage, the court's resolution of defendant's motion for summary judgment on the issue of validity may well have been different.

In light of the court's ruling on the defendant's motion for judgment as a matter of law with respect to the issue of validity, defendant's motion for judgment as a matter of law on the issue of willful infringement is denied as moot. Moreover, even if the Federal Circuit were to reverse this court on its JMOL determination, the jury's willfulness finding should not be set aside nor should defendant be entitled to a new trial. The crux of this opinion is that the '193 patent is obvious as a matter of law; if the court is deemed to be incorrect in that conclusion, that is, if there actually was a question of fact for the jury on obviousness, then, as plaintiff discusses in his responsive papers, the evidence presented supports the jury's conclusion that the infringement was willful and, also, the verdict was not so contrary to the weight of that evidence as to mandate a new trial.

1228

**IT IS THEREFORE BY THE COURT ORDERED THAT** defendant's renewed motion for judgment as a matter of law (doc. 200) is granted in part and denied in part. It is granted as to validity; it is denied as to wilfulness of infringement. Defendant's alternative request for a new trial is denied.