**In re Lucas S. GORDON and Karl M. Sutherland.**

Appeal No. 83–1281.
Serial No. 124312.

United States Court of Appeals, Federal Circuit.

May 10, 1984.

James W. Geriak, Los Angeles, Cal., argued for appellants. With him on brief was Bradford J. Duft, Los Angeles, Cal.

John F. Pitrelli, Arlington, Va., argued for appellee. With him on brief were Joseph F. Nakamura, Sol. and John W. Dewhirst, Associate Sol., Washington, D.C.

Before BENNETT, Circuit Judge, SKELTON, Senior Circuit Judge, and MILLER, Circuit Judge.

JACK R. MILLER, Circuit Judge.

This appeal is from the decision of the United States Patent and Trademark Office ("PTO") Board of Appeals ("board") affirming the examiner's rejection of appellants' claims [1] 1–3 and 5–7 as unpatentable under 35 U.S.C. § 103. We reverse.

### THE INVENTION

Appellants claim a "blood filter assembly" used during surgery and other medical procedures involving the handling of blood to remove clots, bone debris, tissue, or other foreign materials from blood before it is returned to a patient's body. Unlike blood filter assemblies widely used in the prior art, the device of the present invention permits both entry of the blood into, and ultimate discharge of the blood out of, the *bottom* end of the filter assembly, as shown below.[2]

---

**1.** In application Serial No. 124,312, filed February 25, 1980, for a "Blood Filter."

**2.** Extraneous numbers have been removed from this and the subsequent drawing for clarification.

FIG 1.

c. a blood outlet located in the region of said bottom end,

d. a gas vent located in the region of said top end, and

e. a blood filter medium located between said blood inlet and said blood outlet,

said blood inlet being located and configured in a manner capable of directing incoming blood in a generally spiral path within said shell.

Claims 2, 3, and 5–7 further define the shape of the shell, the shape of the filter medium, and the nature of the material used as the filter medium.

### PRIOR ART

The sole reference relied upon by the board is United States Patent No. 1,175,-948, issued March 21, 1916, to French. French discloses a liquid strainer for removing dirt and water from gasoline and other light oils. As shown below, the inlet 4 and outlet 5 of the French device are both at the *top* end of the device.

The blood filter assembly comprises a shell 1 provided with blood inlet 3 and blood outlet 4. Between the blood inlet and the blood outlet is filter medium 6 positioned within the filter medium core 7.

The location of blood inlet 3 is such that the incoming blood is directed along a spirally upward path by the inner wall of the shell. Further, the location of the blood inlet at the bottom end of the filter assembly facilitates the removal of gas bubbles by allowing them to rise upwardly out of the blood. The gas bubbles so removed are released from the blood filter assembly by means of a gas vent 5 located in the region of the top end of the assembly.

Independent claim 1, from which the other appealed claims depend, is illustrative:

Blood filter assembly comprising:

a. a shell having a first top end and a second bottom end,

b. a blood inlet located in the region of said bottom end and opening into said bottom end,

A continuous helical tooth or thread 8 is formed integral with the inner wall of shell 1 and imparts to the incoming liquid a whirling motion, which gives the liquid a scouring action to help clean the surface of a metal screen filter 21 and guides unwanted dirt and water downwardly into a pocket 9 in the bottom of the shell. A pair of shelves 10 and 11, projecting inwardly and downwardly from the inner wall of the shell, further assists the entrance of dirt and water into the pocket 9 and prevents their being drawn back into the main chamber 12. The reference expressly states, "gravity assists in the separation of heavier oils or water." A pet-cock 13, projecting vertically downward from the bottom of the pocket is used to remove the collected dirt and water periodically. The top of the liquid strainer is completely closed by gland 3 except for the inlet and outlet openings.

## BOARD OPINION

The board held that the appealed claims were drawn to an apparatus which "would have at least been rendered *prima facie* obvious to one of ordinary skill in the art by the apparatus disclosed in French." The board's reasoning was that it would have been obvious to turn the French device upside down to have both the inlet and outlet at the bottom, rather than at the top; and to employ French's "pet-cock" as the claimed "gas vent." In the board's opinion, no patentable distinction was created by viewing French's apparatus from one direction and the claimed apparatus from another.

## ANALYSIS

We are persuaded that the board erred in its conclusion of *prima facie* obviousness. The question is not whether a patentable distinction is created by viewing a prior art apparatus from one direction and a claimed apparatus from another, but, rather, whether it would have been obvious from a fair reading of the prior art reference as a whole to turn the prior art apparatus upside down. French teaches a liquid strainer which relies, at least in part, upon the assistance of gravity to separate undesired dirt and water from gasoline and other light oils. Therefore, it is not seen that French would have provided any motivation to one of ordinary skill in the art to employ the French apparatus in an upside down orientation. The mere fact that the prior art could be so modified would not have made the modification obvious unless the prior art suggested the desirability of the modification. *See Carl Schenck, A.G. v. Nortron Corp.*, 713 F.2d 782, 787, 218 USPQ 698, 702 (Fed.Cir.1983), and *In re Sernaker*, 702 F.2d 989, 995-96, 217 USPQ 1, 6-7 (Fed.Cir.1983), both citing *In re Imperato*, 486 F.2d 585, 587, 179 USPQ 730, 732 (CCPA 1973).

Indeed, if the French apparatus were turned upside down, it would be rendered inoperable for its intended purpose. The gasoline to be filtered would be trapped in pocket 9, and the water French seeks to separate would flow freely out of the outlet 5. Further, unwanted dirt would build up in the space between the wall of shell 1 and screen 21, so that, in time, screen 21 would become clogged unless a drain valve, such as pet-cock 13, were re-introduced at the new "bottom" of the apparatus. *See In re Schulpen*, 390 F.2d 1009, 1013, 157 USPQ 52, 55 (CCPA 1968). In effect, French teaches away from the board's proposed modification.

Because the PTO has failed to establish a *prima facie* case of obviousness, the rejection of claims 1-3 and 5-7 as unpatentable under 35 U.S.C. § 103 must be *reversed.*[3]

REVERSED.

---

**3.** Because our holding that the PTO has failed to establish a *prima facie* case is dispositive, it is unnecessary to reach other arguments raised by appellants.